Robert A. Nersesian
Nevada Bar No. 2762
Thea Marie Sankiewicz
NevadaBar No.  2788
**NERSESIAN & SANKIEWICZ**
528 South Eighth Street
Las Vegas, Nevada89101
Telephone:  702-385-5454
Facsimile:   702-385-7667
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Darius McCall, | ) Case No.: 2:18-cv-01319-APG-GWF |
| Plaintiff, | ) |
| vs. | ) |
| Las Vegas Metropolitan Police Department, Jeremy Jacobitz, Brianna Muenzenmeyer, Drock Gaming, LLC, d/b/a The D, Raymond Thompson, Colton Hafen, and George Ramirez-Marillo | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

## COMPLAINT

## JURISDICTIONAL ALLEGATIONS AND ALLEGATIONS COMMON TO ALL COUNTS

NOW COMES Plaintiff, Darius McCall ("Plaintiff"), and for his complaint against the defendants, states as follows:

1. Defendant, Las Vegas Metropolitan Police Department ("LVMPD"), is a government agency operating in Clark County, Nevada.

2. Defendants, Jeremy Jacobitz ("Jacobitz"), Brianna Muenzenmeyer, Colton Hafen, and George Ramirez-Murillo ("Ramirez") are residents of Clark County, Nevada, and at all times relevant hereto, were employees of the LVMPD as police officers.

3. Defendant, Drock Gaming, LLC ("The D"), is a gaming licensee holding a non-restricted gaming license from the State of Nevada, and doing business in Clark County, Nevada.

4. Plaintiff is a resident of Nevada.

5. The events described below all occurred in Clark County, Nevada.

6. On October 10, 2017, Plaintiff was gainfully employed by TLC Resorts Vacation Club ("TLC") as a promoter providing information to prospective customers of TLC at the Freemont Street Experience in Downtown Las Vegas.

7. TLC was licensed to undertake the activities it undertook at the Fremont Street Experience.

8. The D is a hotel/casino located at the Fremont Street Experience.

9. Plaintiff was a regular business invitee of the offerings at The D, and had twice dined within it on October 10, 2017.

10. Plaintiff's work for TLC was out of a kiosk fronting on the Fremont Street experience.

11. At approximately 7:30 p.m., Plaintiff entered The D for the purpose of using its restroom.

12. At no time on October 10, 2017 within The D did the Plaintiff undertake any activity within The D which could be characterized as suspicious or disruptive.

13. At no time on October 10, 2017 upon or at Fremont Street Experience did the Plaintiff undertake any activity within the Fremont Street Experience which could be characterized as suspicious or disruptive.

14. Plaintiff was unarmed at all times relevant to this litigation, and gave no one any reason to suspect that he was in possession of any weapons of any nature.

**Nersesian & Sankiewicz**
528 South Eighth Street

2

15. Plaintiff is an African American male of large stature, and it appears that due to his race he was profiled for the events described below.

16. As Plaintiff approached the restroom within The D, having proceeded directly from the Fremont Street Experience to the restroom within The D, Officer Jacobitz confronted Plaintiff, with the first direction from Jacobitz being that Plaintiff must restrain his hands, face a proximate wall, and spread his legs.

17. Officers Jacobitz and Muenzenmeyer then non-consensually searched the Plaintiff, and in the process, secured Plaintiff's wallet and took possession of the Plaintiff's driver's license.

18. At the time of the search there was no indication that the Plaintiff was in possession of any weapons or presented a danger to officer Jacobitz or other officer(s) present.

19. Jacobitz effectively admitted that he was not using his authority for any constitutional <u>Terry</u> stop, affirmatively stating relative to the detention of the Plaintiff: "I don't know what they [The D] want to do. This isn't our [a police] thing. All they do is they give us a picture and say go get this guy. I think he's been out here selling dope."

20. The search of the Plaintiff by Jacobitz exceeded that of an authorized <u>Terry</u> pat-down search for weapons.

21. Just shy of seven minutes into the detention, Defendants Hafen and Ramirez arrive at the detention of the Plaintiff being undertaken by Defendants Jacobitz and Muenzenmeyer.

22. At nine minutes and fifty-odd seconds into the detention of the Plaintiff, Jacobitz had confirmed or been informed:

   a. That Defendant worked on Freemont Street;

   b. That he was on the premises of The D to use the restroom;

Nersesian & Sankiewicz
528 South Eighth Street

3

  c. That the allegedly suspicious persons that the Plaintiff had been speaking to on Freemont Street (Plaintiff's job) had not followed or preceded the Plaintiff into The D;

  d. Of Plaintiff's identity;

  e. That a records check of the Plaintiff confirmed that the Plaintiff had no outstanding wants or warrants; and

  f. That the Plaintiff was unarmed.

  g. That the Plaintiff was not in possession of any contraband.

23. At this point in time Jacobitz confirmed that all basis for the <u>Terry</u> stop had been investigated and dispelled, and affirmatively stated: "We'll see what they [The D] want to do first. I sent them [Ramirez and Hafen] down to security to see if they want to trespass him . . .. . And if that's the case, we'll get him [Plaintiff] out of here.

24. Much later, in response to repeated inquiries, Jacobitz responded with the patently false statement that security at The D had informed him of suspicious activities being undertaken by Plaintiff which were false due to the fact that a person who's job it is to find leads by talking to persons on Freemont Street, as known to Defendants, commits no suspicious activity whatsoever in talking to persons on Freemont Street. Indeed, the fact that this appears to stem from Plaintiff undertaking is job in speaking with two African Americans on Freemont Street, as opposed to the dozens of other persons with whom Plaintiff interacted in his job, supports the conclusion of illegitimate racial profiling for all Defendants.

25. Jacobitz knew this to be false as he had, apparently, espied Plaintiff's entire activities within The D, and further, the statement appears fabricated considering Plaintiff's direct

**Nersesian & Sankiewicz**
528 South Eighth Street

4

path to the restroom without any suspicious activities occurring at any level or in any manner.

26. During this interaction with Jacobitz and the female officer, Plaintiff explained that he was working and for whom he was working. This was confirmed when Jacobitz reached out and offensively contacted Plaintiff, snatching Plaintiff's credentials for TLC off of Plaintiff's shirt while simultaneously verbally abusing the Plaintiff through, for example, calling Plaintiff a liar in a loud voice.

27. The events to this point and hereafter occurred in the publicly accessible area of The D, and there were other customers of The D consistently within the vision and hearing of the activities inclusive of the handcuffing and seizure of the Plaintiff by persons who were police officers.

28. Having determined that Plaintiff was unarmed, with no indication of Plaintiff having committed any crime, and with a full and confirmed explanation of the Plaintiff's reason for being in the area, Jacobitz nonetheless continued to browbeat Plaintiff and detain Plaintiff, to which the Plaintiff was incredulous concerning the actions Jacobitz was taking against him (such incredulity being without physical threat or verbal threat giving rise to any physical concern)

29. Rather than releasing Plaintiff at that point as the circumstances dictated and the law mandated, Jacobitz, nonetheless, then further battered Plaintiff by placing Plaintiff in handcuffs and putting Plaintiff in a seat.

30. Plaintiff freely provided his identity to Jacobitz and his apparent partner when requested.

31. Jacobitz then commenced asking Plaintiff further intrusive and personal questions, some of which Plaintiff declined to answer.

32. Jacobitz threatened Plaintiff with arrest if Plaintiff continued to withhold answering the questions beyond identity posed by Jacobitz and his statement that he was at work, patently ignoring the clearly established law as stated in <u>Hiibel v. Sixth Judicial Dist. Court</u>, 542 U.S. 177 (2004).

33. As matters progressed, Hafen and Rodriguiz, officers with the LVMPD and who were with Jacobitz and Muenzenmeyer arrived on the scene, all acting within the course of their employment with the LVMPD.

34. As a further indication of lack of suspicious activity Jacobitz surreptitiously spoke with other members of his team who then departed, and proceeded to a different floor of The D, apparently following instructions to find someone in authority with The D to assist in addressing Plaintiff through what, at that point, had transmogrified into a clear detention without probable cause or suspicion of any kind and a clear intent to persecute the Plaintiff.

35. As of nine minutes and fifty-odd seconds, any basis for any detention, even under the Defendants' scenario, had ceased, but the detention of the Plaintiff in handcuffs continued.

36. Hafen and Ramirez participated in this continued detention and understood at the time that the Plaintiff would be subject to continued unconstitutional detention while they undertook actions at the request of Jacobitz to determine whether or not The D would arrive and issue a trespass warning to Plaintiff pursuant to NRS 207.200.

37. LVMPD officers who had previously departed at the apparent direction or request of Jacobitz, after a period of time lasting minutes, arrived back in the area where Plaintiff was seated, handcuffed, and guarded, now accompanied by security personnel employed by The D.

38. Muenzenmeyer then invaded Plaintiff's personal property and removed Plaintiff driver's license, at the request of The D, and provided it to personnel of The D.

39. To this point, throughout the encounter, and prior to the encounter, Plaintiff had undertaken no action which would provide to anyone any indication that he was in possession of drugs or under the influence of drugs, and further, Plaintiff was not in possession of drugs nor was he under the influence of any drugs.

40. Defendant, Raymond Thompson ("Thompson"), one of the security personnel with The D, then assumed a material role in the continued detention of the Plaintiff, and while Plaintiff was handcuffed and seated, began to read a trespass warning to the Plaintiff quoting the language from NRS 207.200. To all appearances it was obvious that Thompson was undertaking this action at the request of, and in compliance with, the demands of Jacobitz and the other LVMPD officers with him.

41. Plaintiff asked Thompson repeatedly what he had done to warrant The D persecuting him and restricting his access to their premises.

42. Despite numerous entreaties, Thompson never provided any explanation to Plaintiff as to the reason for the trespass or for his assistance to Jacobitz through providing cover for the illegal detention of which Plaintiff found himself in the midst.

43. At all relevant times, Thompson was employed by The D, and acting within the scope of his employment with The D.

44. On information and belief, Jacobitz' compatriots who had sought out and retrieved Thompson had told Thompson that they (the LVMPD) desired that Plaintiff be trespassed, and requested the action in concert with them through Thompson in continuing to seize the Plaintiff.

45. No one with The D ever verbalized to Plaintiff a reason as to why he was given a trespass warning or explained why The D was assisting Jacobitz and the other LVMPD officers in the seizure and persecution of the Plaintiff.

46. The LVMPD then made a written declaration falsely stating that Plaintiff "did then and there commit each of the following offenses/infractions: . . . trespass."

47. Trespass, as an "offense" or "infraction," requires violation of NRS 207.200, and as known to all concerned, at no time did Plaintiff refuse to leave any place, or go upon a place after being told he could not do so, and committed no offense or infraction of any type, and the written statement of the LVMPD and its employee acting within the course and scope of his employment. and the employee of The D were known to be false and recognizable as falsely accusing the Plaintiff of criminal activity at the time the statement was executed.

48. The D personnel acted in concert with Jacobitz, Hafen, Ramirez, Muenzenmeyer and the LVMPD in fabricating a basis (albeit insufficient) for the initial detention and the continued detention of the Plaintiff, and in this respect, fully participated in the false imprisonment and the violation of the civil rights of the Plaintiff.

49. The LVMPD has a policy and practice of seizing persons for the purpose of continuing to hold them, initially detain them, or participating in continued detention for the purpose of assisting gaming licensees in Nevada in getting identification of, coercing recorded trespass warnings, and otherwise provide a benefit to gaming licensees for their own benefit in record-keeping, all through detaining or continuing the detention of persons without legal authority and in violation of U.S. Const. Amd. 4.

50. There is no legal authority or legitimate basis authorizing state officials to seized and take into custody individuals for the purpose of having other members of society or businesses

to undertake their private business with the seized individuals. Indeed, it is clearly established law that in order for a seizure or continued detention in an encounter to meet constitutional standards, the detention must be premised on, at least, reasonable suspicion that a crime is about to be committed, is being committed, or was committed in relation to the detention. Further, the Defendants lacked any discretion to undertake the actions of which Plaintiff complains.

51. As part and parcel of the written declaration, it was also stated that security at The D believed Plaintiff's activities to be "drug related," which alleged suspicion was entirely false and had been dispelled as well.

52. This written record had become part of the LVMPD's records, and under certain circumstances is available to members of the public as known by the persons creating the record inclusive of Jacobitz.

53. Following these events, Jacobitz and other police officers approached Plaintiff at his employment on Fremont Street, and continued browbeating him for no reason and interfering with his work and with his relationship with his supervisor, including:

    a. Insulting his Supervisor for seeking to see why police were accosting me at my work;

    b. Telling her to "shut up," even though their presence and actions were materially interfering with the operation of the business for which I worked; and

    c. Informing her that their actions were "none of your business," even though she was in charge of the location with which they were interfering.

54. It has been confirmed with the LVMPD that the foregoing was all undertaken within its policies and procedures thusly fulfilling the prerequisite to liability of the LVMPD under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Nersesian & Sankiewicz
528 South Eighth Street

9

   a. In this respect, the foregoing was promptly reported to the LVMPD by the Plaintiff on or about October 11, 2017;
   b. Plaintiff provided further information with the complaint, including but not limited to, evidence for purchases at the premises of The D on the date of the events showing that Plaintiff, in addition to being a licensee of The D on the day in question through the use of the restroom, was also a business invitee at the premises.

55. The LVMPD investigated Plaintiff's concerns and facts, and as all was true, it appears that they necessarily confirmed that the foregoing occurred as stated.

56. On November 3, 2018, Plaintiff received a response to his reporting of the incident(s) to the LVMPD under the signature block of Joseph Lombardo, Sheriff, and signed on Sheriff Lombardo's behalf by Lieutenant Ted Glaude with Sheriff Lombardo's evident authority.

57. The letter expressly recognized the foregoing explaining that there was no violation found in the LVMPD's review of the facts, and noting that the reason for this conclusion included as two of three rationals (the other being lack of evidence, which evidence would have included Plaintiff's direct report together with a supporting witness statement) the reasoning that the activities of Jacobitz and the other police officers that "the actions taken by the employee(s) did not rise to the level of misconduct, or was not a policy violation(s)."

58. With two of three possible rationales given showing that the actions were within the policies and procedures of the LVMPD, and the third rationale being contrary to the facts which the LVMPD necessarily knew, the LVMPD, at its highest level, ratified and confirmed that the actions of Jacobitz and the others set forth above are within the

policies and procedures of the LVMPD. This action or lack of action by the LVMPD as stated in writing renders the prerequisite <u>Monell</u> factors plausible in the context of this case.

59. In addition to this statement providing an indication that the actions of Jacobitz were within the policies, customs, and procedures of the LVMPD, it also supports a conclusion that the actions of Jacobitz and the other police officers were in accord with the customs of the LVMPD.

60. From the information provided there were glaring failures by Jocobitz, with the active participation of Ramirez, Muenzenmeyer, and Hafen, to remain within the limits set by <u>Terry v. Ohio</u> on all detentions on less than probable cause (as to the seizure, the search, the handcuffing, and the continued detention to solicit a trespass warning from The D even after reasonable suspicion was entirely dispelled and the basis for the continued detention was no longer a <u>Terry</u> stop, and the LVMPD's express failure to find a violation on glaring facts showing a violation of Plaintiff's constitutional rights is indicative of policy, procedure, and custom adopting such procedures as those of the LVMPD.

61. As additional indicia of policy, practice, and procedure, the fact that no less than four uniformed police officers undertook action in continuing the seizure of Plaintiff in handcuffs after all indicia or reasonable suspicion were inarguably dispelled in violation of Plaintiff's clearly established constitutional right to be free of unreasonable seizure indicates that the actions of Jacobitz and the other police officers were pursuant to policy, procedure, and/or custom adopted and applied by the LVMPS.

62. The actions of Jacobitz were undertaken intentionally, and further, Jacobitz recognized that he was committing false imprisonment and battery when he handcuffed the Plaintiff,

and especially when he continued to seize and detain the Plaintiff in handcuffs. At all times Jacobitz recognized that he did not have discretion to commit the intentional torts of false imprisonment and battery against Plaintiff, and he did not have discretion to commit such actions.

63. While Plaintiff had originally entered The D for the purpose of using the restroom, and had continuously voiced a need to relieve himself, after any claimed constitutional basis for a detention of the Plaintiff had expired, at another request for the ability to relieve himself, Jacobitz denied the Plaintiff the ability to use the restroom clearly intending to inflict distress, pain, and suffering on the Plaintiff for reasons only explicable through malice towards Plaintiff by Jacobitz.

64. Muenzenmeyer, Hafen, and Ramirez also recognized the illegitimacy of the detention, yet continued to assist Jacobitz in his illegal detention of the Plaintiff, and act in concert with Jacobitz and The D in continuing the seizure of the Plaintiff.

65. The actions by the Defendants towards Plaintiff were undertaken with oppression, fraud, and malice.

66. The actions of Jacobitz and his comrades towards the Plaintiff, especially with reference to the follow-up involvement with the Plaintiff following the initial tortious contact, demonstrates conduct motivated by evil motive and intent..

67. Considering the continued detention following all basis for detention having been extinguished, and the battery accomplished through imposition of handcuffing in violation of long-standing clearly established law, as well as the other incidents described above, Jacobitz and the other police Defendants demonstrated intentional, reckless or callous indifference to the federally protected rights of the Plaintiffs.

68. In respect to the prior paragraph and the rights of the Plaintiff under the Fourth Amendment, in the context of the seizure, search, manacling, and continued post-event beratement of the Plaintiff, Jacobitz and his compatriots fully recognized and intended to violate the federally protected rights of the Plaintiff.

69. As a result of the actions of the Defendants, Plaintiff has been damaged in the following manner with respect to each of the succeeding claims for relief:

   a. Emotional distress;

   b. Outrage;

   c. Loss of liberty;

   d. Humiliation;

   e. Mortification;

   f. Loss of reputation;

   g. Fear and emotional distress concerning the promise of criminal charges against him, with the attendant certainty that he was were about to be incarcerated as promised;

   h. Pain and suffering attendant to the handcuffing, tackling, asportation and detention if of Plaintiff.

   i. Loss of sleep and its attendant discomfort;

   j. Mental suffering;

   k. Bruises and contusions; and

   l. A general loss of faith in society, justice, and fellow man;

   together with an entitlement to punitive damages, all in an amount in excess of $15,000.00.

### FIRST CLAIM FOR RELIEF--FALSE IMPRISONMENT

70. Plaintiff incorporates ¶¶ 1-69 above as restated herein.

**Nersesian & Sankiewicz**
528 South Eighth Street

13

71. The actions of the named defendants fulfill the elements of the tort of false imprisonment upon the Plaintiff, and the named defendants are liable to Plaintiff therefor.

72. As the actions of the defendant police officers were undertaken within the course and scope of their employment, the LVMPD is responsible for such actions as the employer of the direct tortfeasors acting within the policies and procedures of the LVMPD.

## SECOND CLAIM FOR RELIEF—BATTERY

73. Plaintiff incorporates ¶¶ 1-72 above as restated herein.

74. The actions of the named defendants fulfill the elements of the tort of battery upon the Plaintiff, and said defendants are liable to Plaintiff therefor.

75. As the actions of the defendant police officers were undertaken within the course and scope of their employment, the LVMPD is responsible for such actions as the employer of the direct tortfeasors acting within the policies and procedures of the LVMPD.

## THIRD CLAIM FOR RELIEF--DEFAMATION

76. Plaintiff incorporates ¶¶ 1-75 above as restated herein.

77. The actions of the named defendants fulfill the elements of the tort of defamation by pantomime upon the Plaintiff, and said defendants are liable to Plaintiff therefor.

78. The actions of the Defendants in placing within public records the statement that the Plaintiff was suspected of drug related activities is an imputation of a crime published to the public by the authors, which includes Jacobitz.

79. The statements by the Defendants and the pantomime communications constitute defamation per se.

80. As the actions described in this claim of the defendant police officers were undertaken within the course and scope of their employment and within its policies and practices, the LVMPD is responsible for such actions as the employer of the direct tortfeasors.

### FOURTH CLAIM FOR RELIEF—NEGLIGENCE

81. Plaintiff incorporates ¶¶ 1-80 above as restated herein.

82. Plaintiff falls within the spectrum of persons for which Nev. Rev. Stat. Ann. § 200.460, Nev. Rev. Stat. Ann. § 200.481, and Nev. Rev. Stat. Ann. § 200.471 were enacted to provide protection.

83. The actions of the named defendants violated these criminal statutes.

84. The actions of the defendants, therefore, constitute negligence per se for which said defendants are liable.

85. As the actions of the defendant police officers as related to this claim were undertaken within the course and scope of their employment, the LVMPD is responsible for such actions as the employer of the direct tortfeasors.

### FIFTH CLAIM FOR RELIEF—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. Plaintiff incorporates ¶¶ 1-85 above as restated herein.

87. The actions of the named Defendants described above were extreme and outrageous.

88. As a direct and proximate result of the extreme and outrageous conduct of the defendants, Plaintiff suffered severe and extreme emotional distress.

89. As the actions of the defendant police officers as related to this claim were undertaken within the course and scope of their employment as well as within its policies and practices, the LVMPD is responsible for such actions as the employer of the direct tortfeasors.

### SIXTH CLAIM FOR RELIEF—INTENTIONAL INTERFERENCE WITH CONTRACT

90. Plaintiff incorporates ¶¶ 1-89 above as restated herein.

91. In entering upon the Fremont Street Experience and confronting the Plaintiff at work while appearing as police officers to all in view and to the Plaintiff's employer, and

aggressively confronting the Plaintiff after all reason for interaction was dispelled and the earlier encounter had ended, the police defendants intended the natural consequences of their actions, to wit: Greatly diminishing the Plaintiff's effectiveness with his employer and causing his employer to question the value of the Plaintiff as an employee.

92. No legitimate police purpose was served by this interaction, and the sole rationale for this interaction was to burden and injure the Plaintiff.

93. Plaintiff's efficacy as an employee was negatively impacted by the actions of the police defendants.

94. Plaintiff was damaged, at least nominally, by this intentional tort committed against him.

95. As the actions of the defendant police officers as related to this claim were undertaken within the course and scope of their employment, the LVMPD is responsible for such actions as the employer of the direct tortfeasors.

## SEVENTH CLAIM FOR RELIEF—CIVIL RIGHTS

96. Plaintiff incorporates ¶¶ 1-95 above as restated herein.

97. The actions of the named Defendants described above created a seizure of the Plaintiff which was violative of Plaintiff's constitutional rights, together with physical impact exceeding reasonable force in a circumstance where any use of force was prohibited under the United States Constitution, all as determinable by clearly established law.

98. As to the LVMPD, the actions of the individual police officers were adopted and ratified by the LVMPD, and also, fall within the policies and practices of the LVMPD as authorized by the LVMPD all the way through the Sheriff acting as the person establishing such practices.

99. Plaintiff is, therefore, entitled to relief under 18 U.S.C. 1983.

100. In addition to the damages stated in ¶ 55 above, Plaintiff is also entitled to attorney's fees pursuant to 18 U.S.C. 1988.

### EIGHTH CLAIM FOR RELIEF—TRESPASS TO CHATTELS

101. Plaintiff incorporates ¶¶ 1-100 above as restated herein.

102. Muenzenmeyer had possession of the Plaintiff's wallet.

103. Without consent, and at the request of The D, Muenzenmeyer removed personal property from the Plaintiff's wallet (driver's license), and at the request of The D, handed this property to The D.

104. The D, through Thompson, then made use of this chattel by transferring and taking information from Plaintiff's personal property to the Plaintiff's detriment and the benefit of The D.

105. As a result of these actions, Muenzenmeyer, The D, and Thompson committed trespass to chattels with respect to Plantiff's personal property.

WHEREFORE Plaintiff prays for judgment in an amount determined by the trier of fact in actual compensatory damages, punitive, and exemplary damages in an amount in excess of $15,000.00, and together therewith, an award of costs and attorney's fees so wrongfully incurred in prosecuting his meritorious claims.

Dated this 12th day of November, 2018

    Nersesian & Sankiewicz

    /s/ *Robert A. Nersesian*_____
    Robert A. Nersesian
    Nev. Bar No. 2762
    528 S. 8th St.
    Las Vegas, NV 89101
    (702) 385-5454
    (702) 385-7667
    E-mail: vegaslegal@aol.com
    Attorneys for Plaintiff

## JURY DEMAND

NOW COMES Plaintiff, and herewith demands trial by jury of all issues so triable in the within action.

Dated this 12th day of November, 2018

                                             Nersesian & Sankiewicz

                                             /s/ *Robert A. Nersesian*
                                             Robert A. Nersesian
                                             Nev. Bar No. 2762
                                             528 S. 8th St.
                                             Las Vegas, NV  89101
                                             (702) 385-5454
                                             (702) 385-7667
                                             E-mail:  vegaslegal@aol.com
                                             Attorneys for Plaintiff